Mark **COLLINS**, Appellant,

v.

**COMMONWEALTH OF KENTUCKY,**
Appellee.

No. 2002–SC–0926–DG.

Supreme Court of Kentucky.

Aug. 26, 2004.

Steven N. Howe, Dry Ridge, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, James Havey, Matthew D. Nelson, Assistant Attorneys General, Frankfort, Counsel for Appellee.

Wilbur M. Zevely, Florence, Tasha K. Scott, Covington, Counsel for Amicus Curiae, Kentucky Association of Criminal Defense Lawyers.

Opinion of the Court by Justice JOHNSTONE.

The Appellant, Mark Collins, appeals from an order of the Grant Circuit Court denying his motion to suppress evidence obtained during a vehicular stop. The Court of Appeals affirmed. This Court granted discretionary review. For the reasons set forth below, we reverse and remand.

The material facts of this case are not disputed. An unidentified person called 911 around 8:00 p.m. from a gas station located in Grant County. The caller complained that the white, male driver of a white Chevrolet Blazer was seen throwing liquid from a bottle toward another vehicle at the Ezy–Stop gas station in Williamstown. The caller did not see the male throw the actual bottle, but identified the liquid as alcohol. Further, the caller indicated that he or she perceived that there was a dispute between the two drivers. The driver of the Blazer then pulled out of the gas station, proceeding southbound on

I-75. The caller was able to give the license plate number of the Blazer.

This information was then passed on to Kentucky State Trooper Oliver, who thereafter located the vehicle approximately two to three miles from the Williamstown exit heading south. Because traffic along that portion of I-75 was slowed due to construction, Trooper Oliver was able to verify the description and the license plate number of the vehicle. While following the vehicle for about two miles, Trooper Oliver did not observe any unusual behavior or erratic driving. Upon stopping the vehicle, Trooper Oliver detected a smell of alcohol on the driver and, consequently, performed a field sobriety test. Thereafter, Appellant was arrested and taken to the Grant County Detention Facility where a blood alcohol test revealed an alcohol concentration level of .186.

Appellant moved to suppress the results of the blood alcohol test, arguing that the investigatory stop of Appellant's vehicle was not based upon reasonable and articulable suspicion. After a hearing, the trial court denied the motion. Appellant thereafter entered a conditional guilty plea to DUI third offense and operating a vehicle on a suspended license, but appealed the trial court's ruling as to his motion to suppress. The Court of Appeals affirmed, determining that the anonymous tip provided a reasonable basis to perform the investigatory stop. This Court granted discretionary review.

 In order to perform an investigatory stop of an automobile, there must exist a reasonable and articulable suspicion that a violation of the law is occurring. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673 (1979). Complications arise when, as here, the information serving as the sole basis of the officer's suspicion is provided by an anonymous informant, whose veracity, reputation, and basis of knowledge cannot be readily assessed. In situations such as these, we are required to examine the totality of the circumstances, and to determine whether the tip, once suitably corroborated, provides sufficient indicia of reliability to justify an investigatory stop. *Alabama v. White*, 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301, 310 (1990).

In *White*, the police received an anonymous telephone tip stating that a woman would leave a specified apartment in a certain vehicle at a particular time. The tipster further indicated that the woman would be carrying cocaine, and would be going to a designated motel. The police proceeded to the apartment complex and observed the described woman leaving the apartment building, getting into the vehicle, and heading toward the motel. The police stopped the vehicle and performed a consensual search, which revealed marijuana and cocaine in the woman's purse. The Supreme Court concluded that the anonymous tip had been sufficiently corroborated to provide reasonable and articulable suspicion to stop the woman's vehicle. The Court relied heavily on the fact that the anonymous tip not only provided information readily available to a third party, but also predicted the future behavior of the woman. *White*, 496 U.S. at 332, 110 S.Ct. at 2417, 110 L.Ed.2d at 310. That is, the caller not only accurately described the woman and her car, but also that she would leave the apartment at a certain time and drive to a specified location. These predictions, corroborated by the investigating officers, demonstrated the informant's intimate knowledge of the woman's conduct and lent credence to the incriminating portion of the tip—that she would be carrying illegal narcotics.

More recently, in *Florida v. J.L.*, the U.S. Supreme Court again addressed the

issue of whether an anonymous tip can be the basis for reasonable and articulable suspicion to conduct an investigatory stop. 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). Florida officers received an anonymous tip stating that a young, black male wearing a plaid shirt and standing with two other males at a particular bus stop was carrying a gun. Minutes later, two officers arrived at the named bus stop and found J.L., wearing a plaid shirt and standing with two other males. Besides the information provided in the tip, the police had no independent reason to suspect that J.L. was engaged in any illegal conduct. The officers performed a frisk on J.L., which revealed a gun. The U.S. Supreme Court determined that the search was unlawful, as the anonymous tip lacked sufficient indicia of reliability upon which to base reasonable suspicion. *J.L.*, 529 U.S. at 274, 120 S.Ct. at 1380, 146 L.Ed.2d at 262.

■ Returning to the factual scenario in the case before us, we conclude that the information supplied by the anonymous tipster lacked sufficient indicia of reliability to justify the investigatory stop performed on Appellant. Both *White* and *J.L.* emphasize that predictive components are especially important to the reliability of an anonymous tip because they provide the police with a means by which to test the knowledge of the tipster. *White,* 496 U.S. at 332, 110 S.Ct. at 2417, 110 L.Ed.2d at 310; *J.L.*, 529 U.S. at 274, 120 S.Ct. at 1379, 146 L.Ed.2d at 260. As in *J.L.*, the tip provided in this matter contained no predictive information; rather, it consisted almost entirely of information readily available to a casual bystander, such as Appellant's license plate number, his direction of travel, and the make and model of his vehicle. Thus, Trooper Oliver was left with no predictive information to corroborate, or other means by which to verify that the tipster had intimate knowledge of any illegal behavior.

■ The reliability of this tip is further diminished because the investigating officer did not independently observe any illegal activity, or any other indication that illegal conduct was afoot. Anonymous descriptions of a person in a certain vehicle or location, though accurate, do not carry sufficient indicia of reliability to justify an investigative stop; however, when coupled with independent observations by police of suspicious conduct, such tips do carry the requisite reliability. See *Raglin v. Commonwealth,* Ky., 812 S.W.2d 494, 495 (1991) (determining that an anonymous tip accurately identifying the appellant's car and location did not in and of itself provide reasonable suspicion to conduct an investigatory stop; an adequate basis for the stop was, however, created once police also independently observed suspicious behavior). Here, though, Trooper Oliver testified at the suppression hearing that he did not observe anything suspicious about Appellant, his vehicle, or his driving. In fact, he candidly admitted that the sole basis for his suspicion was the tip. Like the officers in *J.L.*, Trooper Oliver merely located Appellant in the location designated by the tipster but observed nothing unusual or criminal. Prior to stopping Appellant and detecting the odor of alcohol, there was no outward indication that Appellant was violating the law.

The Commonwealth argues that the tip nonetheless was reliable because nearly every piece of information given was corroborated by Trooper Oliver's observations. The accuracy of the tipster's description certainly aided Trooper Oliver in locating Appellant on I–75. However, the accuracy of the tipster's description did not make it any more reliable because it did not reveal that the tipster was privy to any illegal conduct. Nothing in the con-

tent of the tip indicates that the tipster either had witnessed or could predict any illegal activity. The pouring of an unidentified liquid from a bottle toward another person may signal a dispute, but it is neither criminal conduct nor a reliable indication that criminal conduct is about to occur.

Therefore, we conclude that the tip here lacked the moderate indicia of reliability required by *J.L.* and *White*. Though accurate in its substance, the tip consisted entirely of information available to any casual observer on the street, giving the police no method of verifying that the tipster could be relied upon. The tip neither recounted nor predicted any specific illegal conduct. Moreover, the investigating officer did not independently observe any illegal activity or suspicious behavior. We do not believe that reasonable suspicion can be predicated upon an unidentified person's accurate description of another vehicle and driver, coupled with the bare assertion that the driver had engaged in what might be considered offensive — though not criminal — conduct.

For the foregoing reasons, the decision of the Court of Appeals is hereby reversed and this matter is remanded to the Grant Circuit Court for further proceedings consistent with this opinion.

LAMBERT, C.J.; COOPER, KELLER, and STUMBO, JJ., concur.

GRAVES, J., dissents by separate opinion, with WINTERSHEIMER, J., joining.

WINTERSHEIMER, J., dissents by separate opinion, with GRAVES, J., joining.

Dissenting opinion by Justice GRAVES.

I respectfully dissent because Trooper Oliver's investigatory stop was more rea-sonable than the conclusions drawn by the Majority. The accurate tip from an anonymous citizen, reporting dangerous behavior to the police for the immediate safety of the highways, had more than sufficient indicia of reliability to justify an investigatory stop.

Courts across the country evaluate the quality of the information based on whether it was received from a "professional" or criminal informant, or a cooperative citizen who was either a witness to or victim of a crime. Seven federal circuits and thirty seven states recognize this distinction. 1–3 SEARCH AND SEIZURE § 3.19; *Pawloski v. State*, 269 Ind. 350, 380 N.E.2d 1230 (1978); *State v. Ronngren*, 361 N.W.2d 224 (N.D.1985). The courts in these jurisdictions make this distinction because, while criminal informants' information may be suspect, when citizens altruistically report a crime in progress, the law ought to presume their veracity. If trial courts make this distinction in determining probable cause, the reasonability of a police officer's suspicion when performing a "Terry" stop is further improved *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The majority also seems to add a requirement that officers corroborate criminal activity, even though the United States Supreme Court has never endorsed such a requirement. Neither *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), nor *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), suggest that the only acceptable indicium of reliability is criminal activity, as the majority does today. In *J.L.*, *supra*, the Supreme Court emphasized the importance of the predictive facets of a tip, but principally criticized the near total lack of any indicia of reliability. The informant not only remained anonymous, but provided no information regarding how he knew

about the gun or why his information was reliable. Further, the informant's bare description of J.L., i.e., "a young black male standing at a particular bus stop and wearing a plaid shirt," was a description any casual bystander could have provided, and one that could have applied to a number of men in Miami who used that bus stop. Finally, the description did not provide any context for how the informant gained such information. 529 U.S. at 268, 120 S.Ct. at 1377. In the absence of any minimal indicia of reliability, the Supreme Court held that the police officer did not have a reasonable or reliable suspicion.

Furthermore, in *White, supra,* the Supreme Court upheld an investigatory stop without corroboration of criminal activity. As the majority has already related, the police in *White* received an anonymous phone call explaining that a woman would be leaving a specific apartment in a certain vehicle at a particular time, and that she would be transporting cocaine to a designated motel. The tipster further specified that the woman would be carrying the cocaine in a brown attaché case. However, when she left, she did not have a brown attaché case. Even though the police did not corroborate the only criminal detail of the tip, the Supreme Court nevertheless found the investigatory stop reasonable, based on the accuracy of the other information.

Examining the case decided today, the information provided to Trooper Oliver sufficiently verified the anonymous citizen's tip. The caller identified a white, male driving a white Chevrolet Blazer with a specific license plate number. Calling from the gas station where he had personally witnessed the driver throw what appeared to be alcohol, argue with another driver, and exhibit behavior suggestive of intoxication, he not only provided accurate and detailed information, but also ex-plained his means of such. The caller predicted that the drunk driver would proceed south on I–75. Trooper Oliver there-after located the white Chevrolet Blazer traveling south on I–75 just a few miles from the gas station, precisely where the caller predicted. Trooper Oliver verified every detail of the tip except the drunken behavior of the driver. Although aberrant driving would have made a stop more reasonable, considering the veracity and detail of the citizen's tip, Trooper Oliver's investigatory stop hardly seems unreasonable.

Other factors contributing to the conclusion that Trooper Oliver's suspicion was reasonable include the United States Supreme Court's expressed fears about the dangers of drunk driving, as well as some philosophical reflections on probability and reasonableness.

In *Michigan Department of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), the Supreme Court drew attention to the annual death toll in accidents involving drunk drivers, pointing out that over 25,000 deaths, one million injuries, and $5 billion worth of property damage is caused by drunk driving every year. *Id.* at 451. *Sitz* dealt specially with the constitutionality of police checkpoints in administering sobriety tests. Although the issue in that case differs from the issue herein, it illustrates not only the state's interest in preventing drunk driving, but also the minimal invasiveness of an automobile stop.

Furthermore, Probable cause and reasonable suspicion are both assertions reflecting a state of mind similar to opinion. More certain than a possibility, they reflect probabilities rather than certainty. According to Max Black, *Probabilities,* THE ENCYCLOPEDIA OF PHILOSO-PHY 6, 465 (The Macmillan Co. & Free Press, 1967), "The point of making a probability assertion is to make a prediction

that is both sound (justified by the evidence) and successful (true); if it is the first it may be called warranted, if the second, fulfilled." The difference between the two remains fundamentally a difference between probabilities. Although the meanings of probable cause and reasonable suspicion are inexorably connected to their legal origins, a common sense philosophical reflection on the two can clarify the distinction.

"Probable cause" emphasizes the objective character of the assertion; while "reasonable suspicion" focuses on the state of mind of the subject making the assertion. This conclusion finds support in the legal focus on the entirety of the circumstances surrounding a reasonable suspicion, while the law remains slightly less malleable when discerning probable cause. Although we cannot expect courts to thoroughly investigate the subjective value of an officer's suspicion, the subjectivity of the standard allows more room for one's personal inarticulable insight drawn from years of experience in law enforcement. The best way to account for the imprecise measurement of probabilities that trial courts encounter in these matters is to simply ask whether a conclusion is unreasonable.

In this case, Trooper Oliver's probability assertion manifested in his investigatory stop proved fulfilled, but we must still inquire as to its justification on the evidence available to him. Nothing in the record indicates that Trooper Oliver had any reason to suspect the veracity of the anonymous citizen-informant. He responded no differently than he would have if the tip came from an anonymous eyewitness to a drug deal or kidnapping. Ideally, a drunk driver would provide an officer with superabundant evidence of intoxication. Even though some drunk drivers do not drive awkwardly, they still present

a danger to others because their motor skills and reaction time are impaired. Drunk drivers remain a danger on the road and a threat to others even if they may appear to drive competently.

Trooper Oliver acted quickly and relied on the evidence from a tipster, rather than wait for the evidence from an accident. Thus, he kept the roads safer for everyone on the highways of our Commonwealth. I see no reason to fault an officer discharging his duties or a citizen who generously takes the time to report a crime. The tipster should be commended for being a good citizen and doing more than is required or expected. For these reasons, I would affirm the judgment of the trial court.

WINTERSHEIMER, J., joins in this dissent.

Dissenting opinion by Justice WINTERSHEIMER.

I respectfully dissent from the majority opinion because the circuit judge correctly overruled the motion to suppress the evidence against the defendant based on the totality of the circumstances. The anonymous tip carried with it an indicia of reliability and the information provided to the arresting officer amounted to a reasonable suspicion that the defendant was or was about to become involved in some kind of criminal activity.

In October 1999, Collins was arrested and charged with driving under the influence, third offense, and for driving while his license was suspended. A state trooper made the arrest after stopping Collins on I–75 in Grant County. Collins tested for an alcohol level of 0.186. The basis for the original stop was provided by a person who called police to report conduct by Collins and the direction of his travel. The record does not indicate that the call-

er was identified so the telephone call has been properly treated as anonymous. Upon stopping the vehicle, the officer detected an odor of alcohol on the person of the defendant and after a field sobriety test was given, Collins was arrested.

The unnamed witness described the conduct of Collins at the gas station in detail, claiming he was slinging what was thought to be alcohol at another vehicle. There was no bottle or can thrown from the vehicle, only the liquid. The caller advised that [he] thought it was some kind of dispute.

*Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), adopted a totality of the circumstances approach to determine whether information gained from an anonymous informant and partially verified by police, as to innocent details, amounted to probable cause for the issuance of a search warrant. In that case, the U.S. Supreme Court rejected a strict two-prong test developed in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

In *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the United States Supreme Court applied the totality of circumstances approach to a stop conducted pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *White, supra,* the court held that under the totality of the circumstances, the independent corroboration of the informant's prediction imparted sufficient indicia of reliability.

In this case, the unusual behavior coupled with an apparently aggressive act, were both indicative of illegal activity and sufficiently predictive of future misconduct so as to warrant a Terry stop. The behavior observed and reported by the informant was predictive rather than specula-

tive. It gave rise to a reasonable suspicion that the driver "hurling the projectile" and setting off to drive on public roadways might be a likely candidate either for a DUI offense or potentially as a perpetrator of road rage.

At a pretrial hearing, the defense moved to suppress the evidence. The argument was that the officer did not have sufficient reason to make the investigatory stop based on *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). In that case, the mere act of standing on a corner was in no way violative of any law per se. The circuit judge denied the motion and later the motion for reconsideration stating that there were more facts provided in this case, such as the movement and identity of the vehicle, than were provided in *J.L.* Thus, the circuit judge reasoned that this situation was closer to the facts of *White.* The Court of Appeals affirmed and discussed *J.L.* and also found it distinguishable. This matter involves a decision by a panel of the Court of Appeals which is different from an earlier decision of the Court of Appeals in *Commonwealth v. Priddy,* 2003–SC–41–DG. Certainly, it is the responsibility of this Court to reconcile such differences. In my view, the majority of this Court has endorsed the decision in *Priddy,* rather than the decision in this case.

*Gates, supra, J.L.* and *White,* all involved investigations where an anonymous informant alleged that the defendant was engaged in concealed criminal activity. In none of these cases were the police aware of the veracity of the informant, and in none of the three did the informant provide information to impart the basis of his or her knowledge. In each case, the informant alleged present or future concealed criminal activity and left the police without information as to how the caller knew about the crime. The U.S. Supreme Court

accepted this form of anonymous information as normal:

> The opinion in *Gates* recognized that an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations and given that the veracity of persons supplying anonymous tips is by hypothesis largely unknown, and unknowable.

*White*, 496 U.S. at 329, 110 S.Ct. at 2415 citing *Gates*, 462 U.S. at 237, 103 S.Ct. at 2332.

Here, the anonymous informant described conduct of Collins at the gas station. The caller was able to give a precise description of the automobile, including the license number and its location and direction of travel. This was not a vague or inadequate description. Under the totality of circumstances, the information provided by the caller carried an indicia of reliability. As in every anonymous informant case, the veracity of the caller was "by hypothesis largely unknown and unknowable." *Gates*. This is in contrast to those informants who are known to the police and whose veracity can be established by previous history.

It is of interest to note that a published Court of Appeals opinion, *Stewart v. Commonwealth*, Ky.App., 44 S.W.3d 376 (2000), in which this Court denied discretionary review, approved of a stop because the information from an informant contained some "predictive" information about the movements of a suspect which could be verified on observation. In *Stewart, supra*, a panel of the Court of Appeals determined that an anonymous tip that a couple had just purchased crack cocaine and were traveling in a described vehicle on a particular route had, when the travel was corroborated by police, an indicia of reliability. It can be said that the level of corroboration accepted by this Court when it denied discretionary review of *Stewart* was sufficient here.

*United States v. Wheat*, 278 F.3d 722 (8th Cir.2001), provides an excellent discussion of the difference between anonymous tips relating to "clandestine crimes such as possessory offenses," and those relating to erratic driving in which the basis of the informant's knowledge is likely to be apparent. It is recognized that there is no erratic driving involved in this case.

This Court has applied the totality of circumstances approach in *Lovett v. Commonwealth*, Ky., 103 S.W.3d 72 (2003), wherein an informant provided police with a detailed description of the defendant's methamphetamine laboratory and manufacturing operation. The Court noted that the level of detail provided and the fact that the informant's knowledge was based on his own observation, lent significant reliability to the information. *Lovett, supra*, involved a confidential informant rather than an anonymous caller.

One of the most recent decisions in regard to the application of the Fourth Amendment is *Maryland v. Pringle*, 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003), decided by the United States Supreme Court on December 15, 2003. In that case, a jury convicted the defendant of possession with intent to distribute cocaine and possession of cocaine. The drugs were recovered from a backseat armrest and Pringle, who was a front seat passenger, was arrested along with the driver/owner of the car who had been stopped for speeding and a third occupant who was in the back seat. The three occupants denied that the drugs or the large sum of cash recovered from the glove box was theirs. The U.S. Supreme Court held that the police officer had probable cause to believe that the defendant committed the

crime of possession of cocaine and that his arrest did not contravene the Fourth or Fourteenth Amendment.

The court observed that the long prevailing standard of probable cause protects citizens from unreasonable interferences with privacy and from unfounded charges of crime, while at the same time, giving fair leeway to the enforcement of the law in the protection of the community. *Id.* at 799. The probable cause standard is a practical, nontechnical concept that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, may act. *Id.* The court noted that probable cause is a fluid concept, turning on the assessment of probabilities in a particular factual context, not readily or even usefully reduced to any neat set of legal rules. *Id.* at 800. The probable cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. *Id.* In order to determine whether an officer had probable cause to arrest an individual, a court will examine the events leading up to the arrest and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. *Id.*

Also very instructive is an article in the Texas Law Review, which discusses in great detail the reasonableness of probable cause, tracing it from a historical point of view to the present day application of the Fourth Amendment of the U.S. Constitution. Craig S. Lerner, *The Reasonableness of Probable Cause*, 81 Tex.L.Rev. 951 (2003). The law review article concludes that the Fourth Amendment imposes limits on the power of the state to search private citizens, and yet those limits are not absolute.

The first clause of the Fourth Amendment forecloses only unreasonable searches and the second clause proscribes the issuance of warrants without probable cause. *Id.* at 1025. The probable cause standard is a flexible one. The author indicates that recasting probable cause within a reasonableness framework can open the way for more creative thinking about accommodating law enforcement priorities and observing civil liberties. *Id.* at 1029. As the article indicates, certainly there is a need for a sensible discussion of the importance of criminal procedural rules in striking an appropriate balance between the protection of the public from violence and a protection of its civil liberties.

The legal sanctity accorded to the Fourth Amendment is not offended by the actions of the police in this case. Unfortunately and perhaps, an unintended consequence of this decision will be to put a chill on citizen reports to police of suspicious behavior. The all-too-common phrase, "Why get involved?" is often invoked. The Fourth Amendment was not compromised by the decisions of this Court in *Crayton v. Commonwealth*, Ky., 846 S.W.2d 684 (1992), which adopted the good faith exception of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and *Commonwealth v. Litke*, Ky., 873 S.W.2d 198 (1994). Both cases involved different circumstances both legally and factually.

The facts and law of this decision have demonstrated a legitimate difference of legal opinions as reflected in the varying decisions of the Court of Appeals. In this case, we were fortunate to have a very capable circuit judge and a very prudent prosecutor. The people of Grant County, as well as all travelers on I–75, deserve protection against drunk drivers. The Fourth Amendment prohibition against unreasonable search and seizure is not

present here because the stop, search and arrest were based on reliable information as transmitted to the police dispatcher which produced the stop of the driver. There was no Fourth Amendment violation. The cause of justice was truly served. The judgment of conviction should be affirmed.

GRAVES, J., joins this dissent and also writes separately.