**Gary BROOKS, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellees**

**NO. 2014–CA–001226–MR**

Court of Appeals of Kentucky.

RENDERED: FEBRUARY 19, 2016; 10:00 A.M.

MODIFIED: APRIL 15, 2016

BRIEF FOR APPELLANT: John Gerhart Landon, Frankfort, Kentucky

BRIEF FOR APPELLEE: Jack Conway, Attorney General of Kentucky, David W. Barr, Assistant Attorney General, Frankfort, Kentucky

BEFORE: D. LAMBERT; MAZE; AND THOMPSON, JUDGES.

## OPINION

D. LAMBERT, JUDGE:

This matter is before the Court on appeal from an order entered by the Montgomery Circuit Court denying the suppression motion of the Appellant and defendant in the action below, Gary Brooks. For the reasons herein described, we reverse.

### I. Factual and Procedural History

On January 3, 2014, Montgomery County Deputy Sheriff Kevin Carroll was on routine patrol when he was flagged down by an unidentified female in a parking lot on Cartwright Road in Jeffersonville. This witness advised Carroll that she had just seen what appeared to be a domestic dispute taking place between the occupants of a black car, which was traveling on Cartwright Road toward Trimble Trailer Park. Though the witness did not identify the car in any manner beyond its color, she described the occupants: an adult female driver, an adult male passenger, and two children in the back seat.

Deputy Carroll sought no further information from the witness, including her own identity, and instead proceeded down Cartwright Road toward Trimble Trailer Park to investigate. He stated that Cartwright Road is the only means of access to the main road for Trimble Trailer Park, and so he pulled off Cartwright Road to wait and watch for the subject vehicle. After a few minutes, Carroll sighted a black car, with a female driver, a male passenger (Brooks), and two children in the back seat, emerging from the trailer park. He then pulled behind the subject vehicle, engaged his cruiser's light bar and pulled the vehicle over.

Carroll then approached the vehicle on foot to perform a welfare check on the occupants. He testified both at the preliminary hearing and the suppression hearing that he asked if the occupants had been fighting. He testified that he "couldn't get a lot out of the driver," who refused to make eye contact, and spoke in a quieted voice. He further testified that Brooks spoke over the driver, and answered Carroll's questions for her.

Carroll stated that the female driver's behavior "threw up a flag to me," given his training and experience, and it appeared to him that she was frightened and trying to hide something. He then decided, consistent with his training and experience, that the better course of action to investigate would be to separate the driver and Brooks to question them separately.

It was about that point in time that a second officer, Deputy Ashton Thornberry, arrived on the scene. Carroll was on the driver's side of the vehicle and asked her to step out with him while Brooks would step out and speak with Thornberry. Carroll testified that, in that instant, he noticed something in Brooks' right hand. Upon Carroll's verbal warning to Thornberry about the item in Brooks'

hand, Brooks attempted to surreptitiously drop the object in the floor of the vehicle as he stepped out. The object in Brooks' hand turned out to be a handful of prescription pills, which landed in plain view in the vehicle's passenger side floorboard. When asked, Brooks denied knowledge of the pills, and was arrested for possession of a controlled substance.

Brooks was subsequently indicted on three counts related to the pills. He was charged with possession of a controlled substance in the first degree, as some of the pills were methadone, a Schedule II controlled substance. He was charged with possession of a controlled substance in the third degree, as some of the pills were alprazolam, a Schedule IV controlled substance. The final charge of his indictment was possession of a controlled substance not in original container.

Defense counsel moved to suppress the pills. A suppression hearing took place on April 22, 2014, at which the trial court made oral findings that the stop and arrest were proper. The written order reflected only the denial of the motion.

Brooks entered a conditional guilty plea on May 23, 2014, reserving the right to appeal the trial court's ruling on the suppression motion. He was sentenced on July 1, 2014, receiving a one-year sentence on the first-degree possession charge, a twelve-month sentence on the third-degree possession charge, and ninety days on the improper container charge. These sentences were probated for two years.

This appeal followed, wherein Brooks argues that the stop was improper, and the pills improperly admitted as fruit of the poisonous tree.

## II. Analysis

### A. Standard of Review

The standard of review for a trial court's ruling on a motion to suppress evidence involves a two-step review. The reviewing court must first determine whether the trial court's factual findings were supported by substantial evidence. *Dixon v. Commonwealth*, 149 S.W.3d 426 (Ky.2004). If they were, the factual findings were conclusive, and the reviewing court must then determine whether the trial court properly applied the law to its findings under a *de novo* standard. *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *Commonwealth v. Whitmore*, 92 S.W.3d 76 (Ky.2003).

Neither party contests the trial court's findings of fact; therefore, this Court's analysis will focus on the second prong of the test, and review the trial court's conclusions of law *de novo*.

### B. The Traffic Stop Was Not Supported by Reasonable Suspicion of Criminal Activity

"No right is held more sacred, or more carefully guarded, by the common law, than the right of every individual to the possession and control over his own person[.]" *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968). For this reason, warrantless searches are presumed unreasonable unless they fall within a clearly defined exception to the warrant requirement. *Katz v. U.S.*, 389 U.S. 347, 356–357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Chandler v. Miller*, 520 U.S. 305, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997). The prosecution bears the burden of proving a warrantless search was reasonable. *Commonwealth v. McManus*, 107 S.W.3d 175, 177 (Ky.2003) (citing *Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970)).

The Supreme Court of the United States has previously held that brief, in-

vestigatory stops are permissible if supported by a reasonable and articulable suspicion. *Terry*, supra. While *Terry* dealt specifically with stopping and searching an individual's person, the rule has also been applied to searches of vehicles. See *Piercy v. Commonwealth*, 303 S.W.3d 492, 496 (Ky.App.2010). Law enforcement officers are permitted to perform investigatory stops if "an officer [possesses] either probable cause of a civil infraction or reasonable suspicion of criminal activity." *U.S. v. Lyons*, 687 F.3d 754, 763 (6th Cir.2012).

■ An anonymous tip, standing alone, cannot create a reasonable suspicion to justify a *Terry* stop. In *Florida v. J.L.*, the Supreme Court found that an anonymous tip, which accurately described an individual, his clothing, his location, and correctly claimed the individual possessed a concealed firearm, did not create a reasonable suspicion to permit the individual to be searched, because the tip "lacked sufficient indicia of reliability." 529 U.S. 266, 270, 120 S.Ct. 1375, 1378, 146 L.Ed.2d 254 (2000). In *Alabama v. White*, the Supreme Court found an anonymous tip was sufficient to justify a *Terry* stop when the tip accurately predicted the future behavior of the person to be searched. This prediction of future behavior indicated the tipster possessed a level of intimate knowledge of the individual to be searched, which the Court found to be sufficient indicia of reliability. 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990). The Supreme Court of Kentucky cited both *J.L.* and *White* in *Collins v. Commonwealth*, 142 S.W.3d 113 (Ky.2004). The Court concluded that a tip from an unknown 911 caller, which described a dispute between two patrons of a gas station, where they began throwing bottles at each others' vehicles, was unreliable and therefore did not rise to the level of creating a reasonable suspicion. *Id.* at 117. Even

though the tip in *Collins* was corroborated by the officer later, the Court found the tip lacked reliability because "the investigating officer did not independently observe any illegal activity, or any other indication that illegal conduct was afoot." *Id.* at 116.

■ The tip at issue here was even less reliable than in *Collins*: the tipster did not allege any criminal activity had occurred. The trial court relied entirely on Carroll's testimony that the tipster had informed him of a "verbal or physical domestic," but he later testified on cross-examination that the tipster did not tell him she had seen any physical contact. Further, Carroll did not observe any criminal activity or traffic violations once he had located a black vehicle, which may or may not have been the vehicle the lady claimed to have seen earlier.

There was no reasonable suspicion of criminal activity preceding the stop of the Brooks' vehicle. The trial court even noted as much at the hearing, when it found that there was no evidence of any crime at any point in the stop until the pills came into the officers' view.

## C. The Officer Lacked Sufficient Basis to Invoke the "Emergency Aid" Exception

■ The Commonwealth argued at the hearing, and again before this Court, that the requirement for a warrant was obviated in this situation, as Carroll was acting in accordance with the "emergency aid" exception. This Court described the "emergency aid" exception as well as how it applies to vehicle searches in 2011:

The central purpose of the aptly named emergency aid exception is to allow police officers to assist persons who are seriously injured or threatened with such injury. Law enforcement officers frequently perform essential community caretaking functions, such as helping

stranded motorists, returning lost children to anxious parents, and assisting and protecting citizens in need, that are wholly divorced from law enforcement's criminal-related functions.... Society desires that police officers assist citizens in such life-threatening situations; the emergency aid exception permits them to do so. Consequently, despite the differences between homes and automobiles, we find no reason for making the emergency aid exception unavailable under appropriate circumstances when police officers conduct a warrantless search of a motor vehicle.

*Mundy v. Commonwealth*, 342 S.W.3d 878, 882–883 (Ky.App.2011) (internal citations and quotations omitted).

█ The test for whether this exception applies has two prongs: 1) whether the officer, based on the information available at the time, had an objectively reasonable belief 2) that an occupant of the vehicle was in need of immediate aid. *Id.* at 884.

The Commonwealth argues that an observation of the possibility of physical violence created the facts sufficient to invoke the exception. However, the Commonwealth fails to demonstrate where that belief originated or why it was objectively reasonable.

This Court's own review of the record reveals a different version of the facts. Carroll was informed that an argument, which may or may not have involved physical contact, had occurred among occupants of a particular vehicle. Upon finding a black vehicle in the vicinity, he observes nothing to indicate physical violence had occurred or was about to occur. No visible injuries or other indication of an altercation were present on either individual. The driver acted nervous and evasive, which Carroll concluded to have been the result of fear of Brooks, but could just as

easily have been attributed to fear of Carroll, or anxiety related to the traffic stop.

There is simply no evidence presented that would permit the trial court to conclude the second element of the *Mundy* test was satisfied. Consequently, this Court must find the conclusion by the trial court that the emergency aid exception applied to be clearly erroneous.

### III. Conclusion

This Court, having first concluded that the officer lacked a reasonable suspicion to support a *Terry* stop, and further that the emergency aid exception could not apply in this situation, must likewise conclude that the trial court's denial of the Appellant's motion to suppress was clearly erroneous. This Court therefore orders the judgment of the Montgomery Circuit Court REVERSED, and the Appellant's conviction is hereby VACATED.

ALL CONCUR.