RENDERED: SEPTEMBER 10, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1286-MR

CECIL SIMPSON                                                    APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.      HONORABLE LUCY ANNE VANMETER, JUDGE
ACTION NO. 19-CR-01183

COMMONWEALTH OF KENTUCKY                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, GOODWINE, AND JONES, JUDGES.

JONES, JUDGE: Cecil Simpson appeals his conviction and sentence following the entry of his conditional guilty plea. He reserved his right to appeal the Fayette Circuit Court's denial of his motion to suppress evidence obtained during a vehicular stop. After reviewing the record and relevant case law, we affirm.

## I. BACKGROUND

Officer David Smith of the Lexington Police Department was working during the late evening hours on May 30, 2019, when he saw a Ford Fusion

belonging to Paul McColor parked in front of 734 North Broadway in Lexington. This observation held particular significance for Officer Smith. Approximately three months before, he had arrested an individual in this neighborhood for narcotics possession. The arrestee told Officer Smith he bought the drugs at 734 North Broadway, and he gave Officer Smith the street name of a dealer known as "City." After conferring with a narcotics detective, Officer Smith learned that "City" was an alias for McColor, who was suspected of trafficking narcotics from Detroit to Lexington. The detective also suspected McColor supplied narcotics to the location at 734 North Broadway. Finally, the detective also informed Officer Smith that McColor drove a Ford Fusion and gave him the description and license plate number of the vehicle.

Since that time, Officer Smith and several other patrol officers had made it a special assignment to watch 734 North Broadway. Officer Smith himself had succeeded in making several narcotics arrests of individuals driving away from this location. He also watched the location for the appearance of McColor's Ford Fusion. Three months of continuing investigation followed until, on May 30, 2019, Officer Smith finally observed the Fusion parked at 734 North Broadway.

Officer Smith watched the parked vehicle for thirty minutes before two individuals entered the Fusion and began driving away. The officer followed the vehicle in his cruiser through a few turns; he wanted to avoid a traffic stop of

the vehicle while it was too close to 734 North Broadway because he did not wish to interfere with other officers who might also be watching that location for criminal activity. Although he intended to perform an investigative stop of the Fusion in any event, Officer Smith saw the vehicle make an improper turn, a technical traffic violation of the Kentucky Revised Statutes, when it made a wide right-hand turn into the cross street's left-hand lane.[1] Officer Smith used this opportunity to initiate a traffic stop. Although he intended to perform an investigative stop, and he had already called for assistance from a K-9 unit to execute a sniff search of the vehicle, Officer Smith told the driver that the stop was due to the lane violation so he and his passenger would not get nervous.

After verifying McColor as the Fusion's driver and Simpson as his passenger, Officer Smith went back to his cruiser. He had not yet written the warning notice for McColor's traffic violation when the K-9 unit arrived, approximately six minutes after the initial stop. Following a sniff search around the Fusion, the dog alerted at the passenger side of the vehicle. The officers searched the vehicle and discovered crack cocaine on the passenger-side floorboard. Simpson admitted the drugs were his and volunteered that he also had

---

[1] Although the record does not specifically identify the violated statute, we assume Officer Smith observed a violation of Kentucky Revised Statute (KRS) 189.330, entitled "Turning and right-of-way at intersections." Paragraph (6)(a) of the statute reads as follows: "The operator of a vehicle intending to turn shall do so as follows . . . [r]ight turns–both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway[.]" Under KRS 189.990(1), this is a traffic violation punishable by a fine of "not less than twenty dollars ($20) nor more than one hundred dollars ($100) for each offense."

a small packet of powder cocaine in his wallet. McColor was not arrested.

Instead, Officer Smith gave him a warning notice for the traffic violation. Simpson

was thereafter indicted for first-degree trafficking in a controlled substance and for

being a persistent felony offender.[2]

Prior to trial, Simpson moved the circuit court to suppress the

evidence of the drugs and his statement admitting that they belonged to him,

arguing there was an insufficient basis for the warrantless stop of McColor's

vehicle and, therefore, the police violated his rights under the Fourth Amendment

of the United States Constitution and Section 10 of the Kentucky Constitution. In

his motion, Simpson contended "police proceeded to make an investigatory stop

despite not noting any illegal activity." (Record (R.) at 32.) He also argued the

duration of the traffic stop was unlawfully extended for the purpose of the K-9

sniff search, in violation of *Rodriguez v. United States*, 575 U.S. 348, 135 S. Ct.

1609, 191 L. Ed. 2d 492 (2015).

In a hearing on the motion, Simpson contended the information

leading to the investigatory stop was stale, arguing it was entirely derived from a

tip that was three months old. The Commonwealth asserted the stop was

legitimate, as it was predicated on Officer Smith's observing a traffic violation.

---

[2] Officer Smith later clarified that Simpson was charged with trafficking because he had a large quantity of cash, over nine hundred dollars, in addition to the drugs in his possession; *see, e.g.*, *Commonwealth v. Rodefer*, 189 S.W.3d 550, 553 (Ky. 2006) (holding "possession of an abnormally large amount of cash and illegal drugs" supports a conviction for trafficking).

Furthermore, the Commonwealth contended the tip Officer Smith received three months prior to the stop was merely the starting point for the ongoing investigation in this case. The circuit court ultimately denied the suppression motion, ruling that Officer Smith had reasonable suspicion that criminal activity was afoot and that the investigatory stop did not violate Simpson's Fourth Amendment rights. Simpson thereafter entered a conditional guilty plea reserving his right to appeal the suppression ruling. The circuit court thereafter sentenced Simpson to a term of three-years' imprisonment, probated for three years, on a single count of first-degree possession of a controlled substance.[3] This appeal followed.

## II. ANALYSIS

For his sole issue on appeal, Simpson contends the circuit court erroneously denied his motion to suppress, arguing Officer Smith did not have reasonable articulable suspicion to initiate a traffic stop of McColor's Ford Fusion. "When reviewing a trial court's denial of a motion to suppress, we utilize a clear error standard of review for factual findings and a *de novo* standard of review for conclusions of law." *Greer v. Commonwealth*, 514 S.W.3d 566, 568 (Ky. App. 2017) (quoting *Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky. 2006)).

We begin by pointing out something which does not appear to be in dispute: Officer Smith observed a violation of the traffic laws, which he then used

---

[3] KRS 218A.1415, a Class D felony punishable by a maximum term of three-years' imprisonment.

as an explanation or a ruse to lull the suspicions of McColor and his passenger, Simpson, when he initiated a stop of the vehicle. Officer Smith went so far as to characterize the traffic violation as "no big deal" in the hearing on the suppression motion, although he admitted he used it as an excuse to initiate the stop. He also issued a warning notice to McColor based on the observed infraction.

"[A]n officer who has probable cause to believe a civil traffic violation has occurred may stop a vehicle regardless of his or her subjective motivation in doing so." *Wilson v. Commonwealth*, 37 S.W.3d 745, 749 (Ky. 2001); *see also Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996). The parties and the circuit court chose to frame this matter as an investigative stop, but "it is well-settled that an appellate court may affirm a lower court for any reason supported by the record." *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009). Despite Officer Smith's own assertion that the traffic violation was "no big deal," it was nonetheless a valid reason for a traffic stop. Based purely on the observed traffic infraction, Officer Smith's stop of the Ford Fusion was proper.

Nor does Simpson's invocation of *Rodriguez v. United States*, *supra*, before the circuit court help him argue against the traffic stop now. In his motion, Simpson asserted that the dog sniff search improperly extended the length of the traffic stop, and the circuit court briefly considered this argument during the

suppression hearing. However, Simpson does not argue the point in his briefs before this Court and thus waives the issue. "Questions . . . not argued in the briefs, will not be considered by the Court of Appeals." *Service Financial Company v. Ware*, 473 S.W.3d 98, 103 (Ky. App. 2015) (quoting *Herrick v. Wills*, 333 S.W.2d 275, 276 (Ky. 1959)). In any event, Officer Smith called for the K-9 unit before he proceeded to the vehicle, and he was still in the process of issuing the traffic warning before the unit's arrival and during its sniff of the vehicle. Thus, the evidence indicates that the "sniff search was conducted concurrently with the traffic stop and thus did not prolong the stop beyond what was reasonably required to conduct the traffic stop." *Commonwealth v. Lane*, 553 S.W.3d 203, 206 (Ky. 2018).

Nonetheless, even considering the issue as framed by the parties in their briefs, we affirm the circuit court's determination that Officer Smith performed a valid investigatory stop of the vehicle. To determine whether an investigatory stop is lawful, the Kentucky Supreme Court has provided the following guidance:

> In order to perform an investigatory stop of an automobile, there must exist a reasonable and articulable suspicion that a violation of the law is occurring. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401, 59 L. Ed. 2d 660, 673 (1979). Complications arise when, as here, the information serving as the sole basis of the officer's suspicion is provided by an anonymous informant, whose veracity, reputation, and basis of

knowledge cannot be readily assessed. In situations such as these, we are required to examine the totality of the circumstances, and to determine whether the tip, once suitably corroborated, provides sufficient indicia of reliability to justify an investigatory stop. *Alabama v. White*, 496 U.S. 325, 332, 110 S. Ct. 2412, 2417, 110 L. Ed. 2d 301, 310 (1990).

*Collins v. Commonwealth*, 142 S.W.3d 113, 115 (Ky. 2004).

An anonymous tip, even though accurate in its details, will not justify an investigatory stop unless "the investigating officer . . . independently observe[s] any illegal activity, or any other indication that illegal conduct was afoot." *Brooks v. Commonwealth*, 488 S.W.3d 18, 22 (Ky. App. 2016) (quoting *Collins*, 142 S.W.3d at 116); *see also Florida v. J.L.*, 529 U.S. 266, 270, 120 S. Ct. 1375, 1378, 146 L. Ed. 2d 254 (2000). However, tips from "citizen informants who either (1) have face-to-face contact with the police; or (2) may be identified are generally competent to support a finding of reasonable suspicion (and in some cases, probable cause)[.]" *Commonwealth v. Kelly*, 180 S.W.3d 474, 478 (Ky. 2005).

Finally, it is worth remembering that reasonable suspicion is a "relatively low" standard. *Yopp v. Commonwealth*, 562 S.W.3d 290, 294 (Ky. App. 2018). "A reasonable suspicion is more than an unparticularized suspicion or hunch[,]" *Bauder v. Commonwealth*, 299 S.W.3d 588, 591 (Ky. 2009) (internal quotation marks and citation omitted), but it "is a significantly lower standard than the probable-cause standard." *Boyle v. Commonwealth*, 245 S.W.3d 219, 220 (Ky.

App. 2007).  All that is required for reasonable suspicion is that "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  *Yopp*, 562 S.W.3d at 294 (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968)).

Simpson argues the tip lacked indicia of reliability, citing *Florida v. J.L.*, *supra*.  However, Simpson's discussion of that case is inapposite because it concerns analysis of an *anonymous* tip.  Here, the tip was from a face-to-face encounter between Officer Smith and the individual he arrested for narcotics possession.  "In cases involving identifiable informants who could be subject to criminal liability if it is discovered that the tip is unfounded or fabricated, such tips are entitled to a greater presumption of reliability as opposed to the tips of unknown anonymous informants (who theoretically have nothing to lose)."  *Kelly*, 180 S.W.3d at 477 (internal quotation marks and citation omitted).  In the case of a known informant, "[w]hen determining whether a set of facts is sufficient to generate reasonable suspicion, we must look at the totality of the circumstances in each case."  *Id*. (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990)).

Simpson also argues the stop was predicated on what he characterizes as "stale" information, because Officer Smith received the tip three months

beforehand. However, the Kentucky Supreme Court considered a similar fact pattern in *Commonwealth v. Pride*, 302 S.W.3d 43 (Ky. 2010). In that case, the Supreme Court determined that a tip received by police a year and a half beforehand was not stale because the information in the tip, once verified as reliable, became the starting point for an investigation. *Id*. at 50. *Pride* is instructive in this case. Officer Smith took the face-to-face tip from the informant and verified it through continuing investigation. He consulted with a narcotics detective and made successful narcotics arrests of individuals leaving 734 North Broadway, the premises identified by the informant as where he purchased drugs. This investigation continued until the evening he performed a traffic stop on McColor's Ford Fusion.

The circuit court correctly found Officer Smith had reasonable articulable suspicion to perform an investigative stop. Officer Smith's informant told him he obtained narcotics at 734 North Broadway, and the officer made several narcotics arrests of individuals leaving those premises. A tip from a face-to-face informant may, of itself, be sufficient for reasonable suspicion. *Kelly*, 180 S.W.3d at 478. Furthermore, "[t]he police are permitted to take into account their surroundings–and whether a particular location has a reputation for being a 'known drug' area–when forming a reasonable and articulable suspicion." *Commonwealth v. Marr*, 250 S.W.3d 624, 627 (Ky. 2008). Finally, Officer Smith investigated the

tip's reference to "City" with a narcotics detective, who identified it as a reference to McColor. The detective provided McColor and his vehicle's description to Officer Smith as subjects for further investigation. The collective knowledge of law enforcement officers may be taken into consideration in order to determine whether reasonable suspicion exists. *Commonwealth v. Blake*, 540 S.W.3d 369, 373 (Ky. 2018).

Taken together, these facts meant that Officer Smith had more than an "unparticularized suspicion or hunch[,]" *Bauder*, 299 S.W.3d at 591, when he initiated the traffic stop. We must "take care not to view the factors upon which police officers rely to create reasonable suspicion in isolation" but instead "consider all of the officers' observations, and give due weight to the inferences and deductions drawn by trained law enforcement officers." *Greene v. Commonwealth*, 244 S.W.3d 128, 133-34 (Ky. App. 2008). The circuit court found the totality of evidence supported Officer Smith's reasonable suspicion that criminal activity was afoot. We discern no error in the circuit court's determination.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Fayette Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Adam Meyer
Frankfort, Kentucky

BRIEFS FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky