RENDERED:  DECEMBER 3, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1649-MR

JERRY LEWIS THIMES                                         APPELLANT

v.               APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE THOMAS L. TRAVIS, JUDGE
ACTION NO. 19-CR-00082

COMMONWEALTH OF KENTUCKY                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, JONES, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Jerry Lewis Thimes brings this appeal from an October 10, 2019, judgment of the Fayette Circuit Court sentencing Thimes to five-years' imprisonment.  We affirm.

Detective Logan Stricker with Lexington Narcotics Enforcement Unit received a phone call from a defense attorney.  The defense attorney told Stricker

that a client would be contacting him by phone with information concerning illegal drug activity but wished to remain anonymous.

On November 11, 2018, the anonymous informant contacted Stricker. The informant told the detective that an older black male would be bringing approximately 100 grams of fentanyl from Detroit, Michigan, to Lexington, Kentucky. The informant specified that the older black male would be traveling by Greyhound bus that was scheduled to leave Detroit that night at 10:30 p.m. and to arrive in Lexington at 7:00 a.m., the next morning. The informant also described the older black male as being about 6'2" in height, wearing a black jacket, traveling alone, and carrying a small blue bag, which would contain the illegal drugs. The informant told Stricker that he would call back to confirm that the individual boarded the bus. Subsequently, the informant called Stricker and informed him that the 10:30 p.m. bus had been cancelled. So, the older black male would be taking the next scheduled Greyhound bus, leaving Detroit at 6:30 a.m. the following day and arriving in Lexington at 2:55 p.m.

Stricker confirmed the informant's information concerning the Greyhound bus's cancellation and the subsequent bus's scheduled departure from Detroit and arrival in Lexington. On November 12, 2018, Stricker tracked the bus on Greyhound's website. When it arrived in Lexington, several officers, including Stricker, were discretely observing the departing passengers. Thimes exited the

bus. Thimes was an older black male, traveled alone, 6'1" in height, and carried a small blue bag. Thimes was observed using his cell phone to make a call and then entered a taxicab.

The officers followed the taxicab and eventually effectuated an "investigatory stop." Thimes Brief at 3. According to Stricker, Thimes was asked to step out of the taxicab and provide his identification. Thimes indicated that he was from Detroit and traveled to Lexington for his aunt's funeral. The officers called a canine unit, and it gave a positive alert for narcotics in the taxicab. The taxicab was then searched, and approximately 82 grams of suspected narcotics were found in Thimes' small blue bag.

Thimes was indicted by a Fayette County Grand Jury upon first-degree trafficking in a controlled substance (Kentucky Revised Statutes (KRS) 218A.1412), importing heroin (KRS 218A.1410), and first-degree possession of a controlled substance (KRS 218A.1415). Thimes filed a motion to suppress the 82 grams of heroin[1] seized from his bag. Thimes argued that the anonymous tip was insufficient to justify an investigatory stop of the taxicab and that the stop was improperly extended to summon the canine unit. The circuit court held an evidentiary hearing upon the motion to suppress, and Stricker was the only witness to testify.

_____

[1] The illegal drugs found in the bag proved to be heroin.

-3-

By order entered May 20, 2019, the circuit court denied Stricker's motion to suppress. Given the totality of the circumstances, the circuit court concluded that reasonable suspicion of criminal activity existed to justify the investigatory stop of the taxicab and that the stop was not impermissibly prolonged to allow the canine unit to conduct a sniff search.

Thereafter, in August of 2019, the Commonwealth and Thimes entered into a plea agreement. Consistent therewith, Thimes entered a conditional guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970) to trafficking in a controlled substance. The Commonwealth agreed to dismissal of the remaining charges. By final judgment entered October 10, 2019, Thimes was sentenced to five-years' imprisonment. This appeal follows.

Thimes contends that the circuit court erroneously denied his motion to suppress the heroin seized from his bag. Thimes initially argues that the police lacked reasonable suspicion of criminal activity to justify an investigatory stop of the taxicab. Thimes emphasizes that the tip was anonymous and believed it lacked any indicia of reliability. In particular, Thimes maintains:

> The officers performing the search of [Thimes'] car did not have reasonable suspicion to make the initial stop. Stricker testified that the first phone call was an attorney known to him who informed him that a client of his would be calling with information related to a crime. Stricker knew the name of the attorney who was calling him, and knew a client of his; however, he never confirmed that the person he *speculated* was the tipster

-4-

*actually was* the tipster. According to Stricker, the attorney never told him the name of the client. Although Stricker never even attempted to find out the identity of the informant, he still could not have done so without violating attorney-client privilege. Since the officers could not readily ascertain the informant's identity in order to test his or her reliability, the informant was truly anonymous. Thus, any tips the informant provided would need to provide sufficient indicia of reliability before the officers could have had reasonable suspicion to make the stop.

The tip here did not show that the informant had concealed knowledge of criminal activity. The informant told Stricker that an unnamed, older black male, about six feet, two inches tall, wearing a black jacket and carrying a blue bag would be travelling from Detroit to Lexington by Greyhound bus carrying 100 grams of suspected fentanyl or heroin. This tip not only failed to identify concealed knowledge of criminal activity, it failed to identify a determinate person.

First, the tip did not provide an accurate description of the subject's location. The informant only told that the suspect was coming to the City of Lexington via Greyhound bus. Not only is there a bus stop in Lexington there are Greyhound bus stops in relatively close cities including Frankfort, Berea, London, and Louisville. While the informant did specifically refer to Lexington, they were anonymous so there was no way to confirm with certainty that the suspect would not be coming to one of the other Central Kentucky Greyhound bus stops. Since the tip did not provide a location the suspect was travelling to in Lexington, it is unclear that the officers knew where [Thimes] was going as they followed him.

[Thimes] did fit a general description provided by the tip; however, the description of an older black man travelling from Detroit, who is about six feet, two inches

tall, wearing a black jacket and carrying a blue bag, is generic enough that it could apply to countless people. The anonymous informant never even confirmed that the subject was from Detroit, only that he would be travelling from there. Detroit is a large American city with a population of 670,031 as of 2019. 13.3% of Detroit residents are over the age of 65, 47.3% are male, and 78.6% are black. Cincinnati, where the officers believed the suspect transferred busses, has a population of 303,940 with 12.2% being over 65, 48.2% male, and 42.7% black or African American.

Furthermore, the average height of a black male in the United States is 5 ft 9 in (175.5 cm), not much shorter than the 6 ft, 2 in provided by the informant or [Thimes'] height of 6 ft, 1 in. In addition, Greyhound is a large bus company, carrying more than 16 million passengers in a year.

Like the physical description, a black jacket and a blue bag are not highly descriptive. Any number of persons might be wearing a black jacket in the cool month of November, especially coming from the North. A person who is travelling is likely going to need a bag, and blue is a common color choice, especially for people in Lexington. It is not surprising then, that a person who matched the description got off the bus.

Since Greyhound operates nationally and between Canada and Mexico, it is plausible that a person matching the description getting off the bus described by Stricker could have originated almost anywhere. Stricker also testified that the bus he believed the suspect was on did not go to Lexington but rather the suspect would have had to transfer to another bus in Cincinnati. This transfer was not watched by any officers, thus making it even more difficult to use the tip to identify a determinate person.

The tip was not specific enough to be considered predictive. No specific locations or addresses beyond the city names of Detroit and Lexington were provided by the tipster. The mode of travel was not a specified vehicle, but rather a generic Greyhound bus. Just like Stricker any casual bystander could have looked up the information regarding a Greyhound bus's route between Detroit and Lexington. Furthermore, any person [Thimes] encountered in the period before or during his travel could have asked him where he might be going. Finally, there is nothing especially predictive about a person matching the description provided riding a bus from Detroit to Lexington.

Thimes Brief at 12-15 (citations omitted).

An investigatory stop of a motor vehicle is constitutionally permissible if the police possess a reasonable and articulable suspicion that criminal activity is occurring when considering the totality of the circumstances. *Collins v. Commonwealth*, 142 S.W.3d 113, 115 (Ky. 2004); *see also Terry v. Ohio*, 392 U.S. 1 (1968). A reasonable suspicion of criminal activity may be based upon information provided by an anonymous informant, when such information carries a sufficient indicia of reliability. *Stewart v. Commonwealth*, 44 S.W.3d 376, 380-82 (Ky. App. 2000); *Collins*, 142 S.W.3d at 115. In determining whether such information exhibits a sufficient indicia of reliability, "[t]he information must be viewed based upon the personal observation and independent investigation of the police that would tend to corroborate significant, but not necessarily all, of the facts supplied by the informant. Another important factor involves whether the

information contains facts and conditions as to future actions of third parties ordinarily not easily predicted." *Stewart*, 44 S.W.3d at 380-81 (citing *Alabama v. White*, 496 U.S. 325, 332 (1990)).

Our review of the circuit court's decision upon a motion to suppress is two-fold:

> First, factual findings of the court involving historical facts are conclusive if they are not clearly erroneous and are supported by substantial evidence. Second, the ultimate issue of the existence of reasonable suspicion or probable cause is a mixed question of law and fact subject to de novo review.

*Baltimore v. Commonwealth*, 119 S.W.3d 532, 539 (Ky. 2003).

In the case *sub judice*, Stricker testified that he confirmed the anonymous informant's information concerning the Greyhound bus routes. After the first phone conversation with the anonymous informant, Stricker accessed the Greyhound bus schedule and verified that a bus would be leaving Detroit at 10:30 p.m. on November 11, 2018, and arriving in Lexington at 7:00 a.m. on November 12, 2018. Then, after the second conversation with the anonymous informant, Stricker again accessed the Greyhound bus schedule. He confirmed that the initial bus was cancelled and that another bus would be leaving Detroit at 6:30 a.m. on November 12, 2018, and arriving later that day in Lexington at 2:55 p.m. Once the bus arrived in Lexington, Thimes was observed exiting the bus, and he closely matched the anonymous informant's description. Thimes was an older black male

and 6'1" in height.  He was travelling alone, wearing a black jacket, and carrying a small blue bag, as described by the informant.

Considering the totality of the circumstances, we conclude that the police possessed reasonable suspicion that Thimes possessed illegal drugs to justify an investigatory stop of the taxicab.  The information supplied by the anonymous informant was verified by Stricker as to the Greyhound bus routes and by the observation of the police.  The anonymous tip importantly included detailed and predictive information, which the police verified through their observations.  Taken together, we believe the anonymous information possessed a sufficient indicia of reliability upon which to base reasonable suspicion.  For these reasons, we cannot conclude that the circuit court erred by deciding that reasonable suspicion existed to justify the investigatory stop of the taxicab.

Thimes next asserts that the circuit court erred by concluding that the investigatory stop was not impermissibly extended to permit a police canine to sniff the taxicab for illegal drugs.  Thimes specifically maintains:

> The officers did not observe any kind of traffic infraction; therefore the stop would be best categorized as an investigative or *Terry* stop with a purpose of investigating whether [Thimes] was trafficking drugs. The officers in this case should have ended the search when they found out [Thimes] did not have any warrant in Kentucky and found no physical evidence of drug possession or other criminal activity.  When the officers found out [Thimes'] identity, and saw no evidence of illegal activity, they effectuated the purpose of the stop.

There was no "reasonable or articulable suspicion that criminal activity was afoot." Instead, the officers extended the stop by making [Thimes] and the cab driver wait until they could bring the dog to perform a sniff.

The canine was not present when the officers initiated the stop but rather had to be called in. That fact alone should indicate that the initial purpose of the stop did not involve anything that would require a dog sniff. They clearly expected to see evidence that would justify continuing the search. When they did not, they called in the canine anyway to test their baseless theory.

. . . .

The officers should not have considered the informant's tip in their extension of the stop because once they determined there were no visible drugs the stop should have ended. The tip that there were drugs was the only basis for stopping the car. Once the officers failed to observe signs of the presence of drugs, they should have stopped the search. . . .

Thimes Brief at 22-23 (citations omitted).

The law is well-established that an investigatory stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Hiibel v. Sixth Jud. Dist. Court of Nevada*, 542 U.S. 177, 185 (2004) (quoting *United States v. Sharpe*, 470 U.S. 675, 682 (1985)). So, an investigatory stop may "last no longer than is necessary to carry out the purpose of the stop[.]" *United States v. Campbell*, 549 F.3d 364, 372 (6th Cir. 2008).

Herein, the purpose of the stop of the taxicab was to investigate whether Thimes was carrying illegal drugs in the blue bag. To do so, Stricker

-10-

testified that a canine unit was put on standby earlier that day. Presumably, a canine sniff of the taxicab would have been the least intrusive method to determine if the blue bag contained illegal drugs. And, a valid investigatory stop for a reasonable suspicion of drug trafficking could certainly contemplate a canine search. Stricker further testified that after the taxicab was stopped by police, the canine unit was called. While Thimes argues that the stop was unreasonably prolonged for the canine search, we can find no testimony or evidence in the record concerning the length of time that elapsed between the initial stop and the arrival of the canine unit. In other words, there is no evidence that the length of the stop was unreasonable to facilitate the purpose of the stop. Based upon these circumstances, we conclude that the duration of the investigatory stop was not unreasonable or longer than necessary to carry out the purpose of the stop.

In conclusion, we hold that the circuit court properly denied Thimes' motion to suppress the illegal drugs seized from his bag in the taxicab.

For the foregoing reasons, the Judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Karen Shuff Maurer
Assistant Public Advocate
Department of Public Advocacy
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky
Frankfort, Kentucky

Lauren Lewis
Assistant Attorney General
Frankfort, Kentucky